## William Eager *versus* The Atlas Insurance Company.

In adjusting a partial loss on a ship which has been repaired, the proceeds of the old materials not used in the repairs, are first to be deducted from the gross expenses of the repairs, and then the deduction of one third new for old is to be made from the balance.

A usage at a particular place to make the deduction of one third new for old from the gross amount of the expenses of repairs, cannot control the above-stated general principle of law, in the construction of a policy containing no reference to such usage.

Such usage moreover is unreasonable and cannot be sustained, because it is opposed to an established rule of law, and to the essence of the contract of insurance, which is a contract of indemnity.

Assumpsit on a policy of insurance, dated October 28, 1828, on the ship Grecian, to recover for a partial loss.

Upon a case stated it appeared, that the ship was injured by getting on shore at Liverpool, and was repaired. The loss was settled before the institution of this suit, by a compromise, in which the underwriters assumed the right of deducting the one third new for old from the gross amount of the loss, but it was agreed by both parties, that if this adjustment was erroneous in point of law, the plaintiff should recover a further sum of $226·87, and interest, this sum being the difference, if the deduction ought to have been made from the net amount of loss after deducting the value of the materials saved.

It was agreed for the purposes of this hearing, that at the time of the underwriting of the policy and of the happening of the loss, it was the usage of the insurance offices in Boston

(the place where this policy was underwritten) to make the deduction in the manner in which it was made in the compromise above mentioned.

The policy is in the form adopted in 1823 by all the insurance offices in Boston, and it contains the following clause : — " Touching the adventures and perils which the said company are contented to bear, and take upon them in this voyage, they are, of the seas &c. and all other losses and misfortunes which have or shall come to the damage of the said ship or any part thereof, *to which insurers are liable by the rules and customs of insurance in Boston;* provided " &c. The clause italicised was not contained in the policy, underwritten at Salem, in the case of *Brooks* v. *The Oriental Insurance Company*, 7 Pick. 259.

If on these facts the plaintiff was entitled to recover, judgment was to be rendered on a default, for the sum above mentioned and interest.

*April 6th.*    The case was submitted to the Court upon the opinions of Benjamin R. Nichols, published in the American Jurist, *vol.* 5, *p.* 262, and of Willard Phillips, published in the American Jurist, *vol.* 6, *p.* 45, supporting the ground taken by the plaintiff; — and the opinion of Charles Jackson (formerly a justice of this Court) published in the American Jurist, *vol.* 5, *p.* 252, and a written opinion of William Prescott, on the other side of the question ; also, *Byrnes* v. *National Ins. Co.* 1 Cowen, 265 ; *Dickey* v. *New York Ins. Co.* 4 Cowen, 222, 245 ; 3 Kent's Com. 283 ; *Brooks* v. *Oriental Ins Co.* 7 Pick. 259.

*S. Hubbard,* for the plaintiff.

*Fletcher* and *Cooke* for the defendants.

*June 27th.*    WILDE J. delivered the opinion of the Court.    This case is submitted to our consideration, upon an agreed statement of facts, for the purpose of obtaining a revision of one of the points decided in the case of *Brooks* v. *The Oriental Insurance Company* ; and as that decision was made without a very full discussion, though certainly not without consideration, we have very willingly reëxamined the subject.    But after fully considering the arguments and opinions to which we have been referred, in which the question is discussed with great ability :

and after due deliberation, we have been unable to perceive any sufficient reason for overruling our former decision ; on the contrary, a more close and thorough examination of the principles and the reasons of that decision has rather tended to strengthen and confirm our confidence in its correctness.

The question to be reconsidered is, whether in adjusting a partial loss on a vessel, after repairs made, the deduction of one third from the whole expenses of the repairs is to be made, for the substitution of new materials and work for old ; or whether the proceeds of the old materials not used in the repairs should be first deducted, and the one third be taken from the residue.

Another question arises from the facts agreed, which was not considered in the case of *Brooks* v. *The Oriental Ins Co.*, and which depends on the usage of the insurance offices in Boston, and "the rules and customs of assurance" referred to in the policy. This question, if determined in favor of the defendants, will be decisive, and we have therefore attentively examined the grounds on which it appears to us to depend. The result of the examination I will now briefly state.

It is agreed by the parties, that at the time of the underwriting the policy, and at the time of the loss, it was the usage of the insurance offices then existing in Boston, in adjusting a partial loss, to deduct one third new for old from the gross amount of the expenses of repair. And it appears by the policy, that in the clause enumerating the perils insured against, after specifying the seas, fire, enemies, &c., there is added, "and all other losses, and misfortunes, which have, or shall come to the damage of the said ship, to which insurers are liable by the rules and customs of insurance in Boston." The defendants' counsel contend that this clause in the policy, coupled with the usage before stated, must so control the construction of the contract, as to settle the present question in their favor, whatever may be the general rule of law as to the adjustment of similar losses in other cases.

That a local usage, as well as general usages of trade, may materially affect the construction of a contract, cannot be denied ; but to have this effect such usage must appear to be so well settled, and of so long a continuance, as to raise a fair

presumption that it was known to both contracting parties, and that the contract was made in reference to it. Such a presumption is the only basis, on which any local or particular usage can be sustained, so as to affect the construction of a contract. The usages or customs of particular places are not binding, unless the parties contract in reference to them, and if their agreement be reduced to writing, the reference ought to appear by the terms of the contract. To allow particular usages to control or vary the construction and legal effect of a written contract, would be repugnant to the rules of evidence, and might be followed by perilous and mischievous consequences. Courts take no notice of these local and particular usages; they are to be proved like other facts, and necessarily by parol evidence. *Gordon* v. *Little*, 8 Serg. & Rawle, 557; *Snowden* v. *Warder*, 3 Rawle, 103; *Smith* v. *Wright*, 1 Caines's R. 44. But if parol evidence were admissible, and particular usages might control or vary the construction of a written contract, an insuperable objection to the defence, so far as it depends on the question of usage, would remain. For whatever may have been the usage, and however well known, it can have no effect on ʹne contract, unless it was adopted by the parties, and the contract was made in reference to it; of this there is no proof, nor ground of presumption; on the contrary, the terms of the contract strangely rebut any such presumption. It has been already remarked, that the rules and customs of insurance in Boston are expressly referred to in the policy, but for a purpose foreign to the present question. That reference was introduced for the purpose of designating the perils insured against, and of supplying any omission in the list of those which are enumerated; but it has no relation to the mode of adjusting a partial loss. There are stipulations in the policy touching partial losses, but none in respect to the question now to be considered This question had been settled in New York years before this policy was underwritten, and for some time before had been pending in this Court for decision. From these and other circumstances the presumption is strong, that the parties did not treat, as to the mode of adjustment, on the basis of usage, but on that of the existing law, however it might be decided

When the contract refers to " the customs and rules of insurance in Boston," and specifies how far they shall constitute a part of the contract, it must be inferred that the parties did not intend that it should be affected thereby beyond the extent specified ; especially as the form of the policy was no doubt settled and adopted with great care and deliberation.

These considerations appear to us quite sufficient to settle the question of usage, but other considerations might be added if necessary. The usage relied upon by the defendants is opposed to the essence of the contract of insurance, which is a contract of indemnity. That the usage, if applied to the contract, would deprive the insured of a full indemnity, and give to the underwriters an unreasonable advantage, I shall endeavour to show in discussing the principal question. The usage is also opposed to the rule of law, as we understand it, by which partial losses, when vessels have been repaired, are to be adjusted.

The rule of deducting one third new for old probably originated in usage, but it has been long known and settled in the commercial world, and has been adopted by courts, so that it is now a well settled principle of law. Now it seems to me very clear, that no particular usage opposed to the established principles of law, can be sustained. And so it was decided in the case of *Homer* v. *Dorr*, 10 Mass. R. 26. The insurance was on property laden on freight from Boston to Archangel and back to Boston, taking the risk on shore as well as on board. In an action on the premium note it was held, that the whole note was recoverable, although no property was returned in the ship ; and it was proved to be the universal usage in Boston, where the insurance was effected, to return a portion of the premium in such cases. Again, if local usages are to be admitted to control the rule in question, the object and intention of the rule will be defeated. It was adopted for the sake of convenience, and to avoid the difficulty of ascertaining the relative value of the new and old materials ; but there would be less difficulty in ascertaining this, than there would be to settle the various usages that might spring up in different ports, if every local usage were allowed to control

the principles of law. In Boston the one third new for old might be deducted from the gross expenses of repair ; in Salem the proceeds of the old materials might be first deducted ; and in some other port some other modification might be introduced, either by increasing or diminishing the rate of deduction, so that we might have as many different usages and laws as there are ports in the commonwealth. Instead, therefore, of having a simple, certain and convenient rule for our guide, we should have to consult and ascertain these local usages ; and to conform to the various changes and fluctuations in them which circumstances might from time to time introduce. These local usages may be useful, and are admitted, to explain the intention of parties, where there is reason to presume that the contract was made in reference to them ; but to suffer them to prevail so as to sap the foundation of a well established rule of law, would be going too far. In the present case, however, it is not necessary to determine how far particular usages may be binding, or explanatory of contracts, or of the rules of damages ; it is sufficient to decide, that they can have no effect upon any contract, unless by the consent of the contracting parties, either express or implied. No such consent appears in this case, and it cannot be presumed, for the reasons already stated ; and this seems to be decisive as to the question of usage.

The remaining question is more important, and more involved in doubt and difficulty. The arguments and opinions opposed to the decisions in *Byrnes* v. *National Ins. Co.* 1 Cowen, 265, and in *Brooks* v. *Oriental Ins. Co.* 7 Pick. 259, which have been recently published, are undoubtedly entitled to great consideration ; still however we continue to think that those decisions are sustained by the most weighty and convincing reasons.

All agree that the contract of insurance is one of indemnity, and that this is in truth the essence of the contract. The assured are entitled to a full indemnity from the underwriters, and nothing more. That rule therefore is the best, which will, in the settlement of a loss, most fully and exactly fulfil this principal intention of the contract. It is also admitted.

that the rule of deducting one third new for old, however construed, will not always secure an exact indemnity. The assured will recover more or less than an indemnity, according to the age and state of the vessel before the loss, but this imperfection of the rule is supposed to be more than compensated by its certainty, simplicity and practical convenience. Before the introduction of the rule, the relative value of the new and old materials was ascertained by appraisement in each case ; and the difference between the cost of the new mate rials and work, and the value of the old materials at the time of the loss, was deducted, leaving the balance for which the insurer was liable. This being found inconvenient, and it being difficult to ascertain the value of the old materials with accuracy, the rule of deducting one third new for old was long since substituted for the ancient mode of adjustment, and its continuance for such a length of time proves its practical utility. Since the introduction of the rule neither party can question the relative value of the new and old materials, whether the rule in a particular case should afford an exact indemnity or not. Thus far the parties are bound by the rule, but no further. This, like all other general rules, when applied to a multiplicity of cases, will not always do exact justice, but it should be so applied as to do as little injustice as possible. It will not do to say, that because a rule of necessity produces some unjust results in particular cases, it should be so applied as to produce other similar results without necessity ; and that such must be the effect of the rule contended for by the defendant's counsel, cannot, we think, well be doubted.

Let us suppose, for example, that the vessel parts her cable in a storm, but that a part is saved which is sold for $200, and that a new cable is purchased which costs $300. If one third is deducted from the full price of the new cable, this balances the account, and the assured is entitled to no indemnity. If the part of the old cable saved should sell for $250, the assured, in stating an account, would become indebted to the underwriters $50, and so whenever the old materials sell for more than two thirds of the amount of the expenses of

repairs, a balance will be found in favor of the underwriter. Whether he can claim it or not is not the question ; nor is it any good answer to the objection resulting from the unjust operation of the rule, to say that such cases will but rarely occur ; for a result so unjust, and so manifestly opposed to the spirit of the contract of insurance, ought never to occur.    But without supposing extreme cases, it seems to me that generally the assured will not receive full indemnity, if a third new for old is to be deducted from the whole expenses of repairs, without first deducting the salvage.    The salvage is no part of the loss, and belongs to the assured ; the amount of that, therefore, ought to be withdrawn from the operation of the rule, or the assured will fail to recover a full indemnity.    It is said that the assured, by such a rule, would recover more than an indemnity, and that injustice would be done to the underwriter.    For instance, if the expenses of repairs amount to $600, and the old materials sell for $200, then it is said the assured would be fully indemnified by the recovery of $200, the increased value by the new materials being $200, as assumed by the rule ; whereas by first deducting the proceeds of the old materials, and then deducting one third from the residue, the assured would recover $266·67, — being $66·67 more than a full indemnity. ' But there is a fallacy, we think, in this objection and statement. .

It is true that the vessel is made better by the repairs ; but it by no means follows that the whole amount of the increased value is to be credited to the underwriter.    So far as he contributes to the expenses of the repairs he should be credited for the increased value, but no further.    Now the underwriter has no concern with the expenses of repairs which are defrayed by the old materials.    So far as these go the subject repairs itself, and thus far there is no claim for indemnity.    The further disbursements required to repair the loss, are to be made at the expense of the underwriter, and on these expenses he is entitled to a deduction of one third ; but there seems to be no good reason for extending the rule beyond these limits.

In the case last supposed the adjustment would be thus stated

Whole expenses of repairs, - - - $ 600·00

Deduct expenses paid by the proceeds of the old materials, those being the property of the assured - - - - - - 200·00
_____
400·00

The remaining disbursements being made at the expense of the underwriter, he is entitled to a deduction of one third new for old 133·33
_____

And he is chargeable with the - - - $ 266·67

Which gives generally to the assured a full indemnity, and no more. There may be some exceptions, but in adopting a general rule of decision we are to look at general results.

But it is denied that the old materials are the property of the assured ; it is however difficult to conceive how and when, before the adjustment of the loss, the property in the assured becomes devested and vested in the underwriter. It is said that if the underwriter pays the full amount of the loss, the old materials become his property ; that if a cable is lost, and afterwards the loss is adjusted and the underwriter pays, the old cable if recovered would become the property of the underwriter. And so if part of a cargo is lost, and the loss is paid by the assurer ; the lost articles if recovered would belong to him. This may well be admitted, without affecting the question under consideration, for until an adjustment is made the old materials continue to belong to the assured, and if they are disposed of, and the proceeds are applied to the purchase of new materials, the underwriter, as to that part of the expenses of the repairs, can have no claim to an allowance for the increased value. The repairs made by means of the salvage constitute no part of the loss, and cannot be charged against the insurer ; the old materials therefore clearly belong to the assured.

But a weightier objection to our former decision remains to be considered. It is said to be immaterial to whom the old materials belong, or who pays the disbursements for repairs, because at all events the ship is made one third better by the repairs, and therefore one third of the gross expenses

. 13 *

should be deducted, or the assured will receive more than an indemnity. And this would be true, if the fact were that such would be in all cases the increased value, or if the presumption is to be carried to the extent the objection supposes. But presumptions against facts, established for convenience, are to be strictly guarded, and a rule founded on such presumptions is to be confined to the purposes for which it is adopted. Now it has been already remarked, that the rule in question was adopted to avoid the difficulty and uncertainty of ascertaining the loss, and the amount of indemnity therefor, by appraisement in each particular case. This rule was founded on the supposition or presumption, that generally the new materials are one third better than the old. The question then is, how far this presumption is to be carried out, and to what portion of the repairs the rule is to be applied. We understand the rule to be, that one third is to be deducted from the expenses of repairing the loss, and that the loss is the injury done to the vessel which remains after the proceeds of the old materials have been applied. This is the loss against which the underwriter stipulates to indemnify the assured, and so it was considered before the introduction of the existing rule. 1 Magens, 193. The rule, therefore, and the presumption as to the relative value of the materials, are to be confined to the portion of the repairs remaining after crediting the old materials. These go to reduce the cost of repairs, the underwriter being only chargeable with the difference between the proceeds of the old materials and the cost of the new, and the amount of the difference is the amount paid to repair the loss, on which the deduction of one third new for old is to be made.

This on the whole, as we think, is much the most equitable rule of adjustment, and best adapted to secure, as nearly as any general rule can, exact indemnity ; and commonly it will not be found too favorable to the assured ; whereas the rule contended for by the defendants might lead to injustice, and even absurdity ; or to a train of exceptions which might be very embarrassing.

*Judgment for the plaintiff*